# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| KNICKERBOCKER BED COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:17-cv-00547-JRG |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| LEGGETT & PLATT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT LEGGETT & PLATT, INCORPORATED'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR TRADE DRESS INFRINGEMENT

Defendant Leggett & Platt, Incorporated ("L&P"), for its Answer and Affirmative Defenses in response to Plaintiff's Complaint (Dkt. No. 1, "Complaint"), hereby states and alleges the following:

## ANSWER

### Jurisdiction and Venue

1. This action arises under 15 U.S.C. § 1125 et. seq. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**ANSWER:** Paragraph 1 of the Complaint states legal conclusions to which no response is required. To the extent a response may be required, L&P admits that the Complaint alleges claims purporting to arise under 15 U.S.C. § 1125 *et seq.*, and that the Court has subject-matter jurisdiction over claims arising under 15 U.S.C. § 1125 *et seq.* L&P admits that the Complaint alleges claims purporting to arise under Texas law, and that the Court can have supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(a). L&P denies that it has violated 15 U.S.C. § 1125 *et seq.* or Texas state law.

2.      Supplemental jurisdiction of this Court exists for the state law claims stated herein, each of which arises out of a common nucleus of operative facts with those from which the federal claims arise.

**ANSWER:**   Paragraph 2 of the Complaint states legal conclusions to which no response is required.  To the extent a response may be required, L&P admits that the Complaint alleges claims purporting to arise under Texas state and federal law.  L&P denies all other allegations in Paragraph 2 to the extent they are not specifically admitted.

3.      Upon information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (a) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents; and/or (b) at least part of its infringing activities alleged herein.

**ANSWER:**   Paragraph 3 of the Complaint states legal conclusions to which no response is required.  To the extent a response may be required, L&P admits that it has conducted business in Texas and that personal jurisdiction exists over L&P in this case.  L&P denies all other allegations in Paragraph 3 to the extent they are not specifically admitted.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. For example, upon information and belief, Defendant has committed infringing acts alleged below within the District of this Court, in business interactions purposefully elicited by Defendant with or directed to residents of said District, including, inter alia, actively soliciting and causing infringing and other wrongful sales directed into the District as well as directing internet website advertising and promotion and other promotion and advertising within and toward this District. As another example, upon information and belief, Defendant is subject to the court's person [*sic*] jurisdiction with respect to the claims below and this civil action.

**ANSWER:**   Paragraph 4 of the Complaint states legal conclusions to which no response is required.  To the extent a response may be required, L&P admits that this action may be brought in this District pursuant to 28 U.S.C. § 1391, but denies that this District is a convenient forum for the parties or potential witnesses.  L&P reserves the right to seek transfer of this case to another jurisdiction pursuant to 28 U.S.C. § 1404.  L&P admits that personal

jurisdiction exists over it in this case. L&P denies all other allegations in Paragraph 4 to the extent they are not specifically admitted.

## The Parties[1]

5.      Knickerbocker is a corporation existing under the laws of New Jersey, with its principal place of business at 770 Commercial Ave, Carlstadt, NJ 07072.

**ANSWER:**      L&P lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint and therefore denies each and every allegation.

6.      Knickerbocker has at all relevant times owned all relevant trade dress and other rights asserted in this action.

**ANSWER:**      L&P denies each and every allegation in Paragraph 6 of the Complaint.

7.      Knickerbocker is informed and believes, and based thereon alleges, that Defendant is a Missouri corporation, having its principal place of business in Carthage, Missouri. Upon information and belief, Defendant is registered to do business in Texas, and can be served through its registered agent, C T Corporation System, 350 North St. Paul St., Dallas, Texas 75201.

**ANSWER:**      L&P admits that it is a Missouri corporation, having its principal place of business in Carthage, Missouri, and that it is registered to do business in Texas. L&P further admits that it can be served through its registered agent, C T Corporation System, whose current address is 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## Factual Background and General Allegations

8.      Knickerbocker is America's premier manufacturer of stylish and attractive heavy-duty bed frames and bedding-support systems. It is a fourth-generation family-owned-and-operated company in business since 1919. It began with a husband and wife manufacturing and selling bed springs in the greater New York area. They were known for their commitment to customer service, high quality merchandise, and support of their local community. In the 1950's, their children expanded the line to include folding beds, headboards, and metal bed frames.

---

[1] Plaintiff incorrectly numbered the paragraphs in its Complaint by restarting at paragraph 1 under the header "The Parties." L&P has corrected that error in its Answer by using continuous paragraph numbering throughout.

**ANSWER:** L&P lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint and therefore denies each and every allegation.

9. By the 1960's, Knickerbocker's products were being shipped up and down the East Coast. The third generation of the family expanded operations nationwide in the late 1970's to service retail customers who had established a presence in the Midwest and on the West Coast.

**ANSWER:** L&P lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint and therefore denies each and every allegation.

10. At the turn of the millennium, Knickerbocker's fourth generation began the process of adding decorative polymer resin covers to conventional steel bed frames, hereby changing the visual appearance of the product. In addition, polymer resin leg structures were added to both bed frames and wood bed support systems. The newly introduced bed frames and bed support systems featured attractive styling, which eliminated the "cold, hard, look and feel" of products that retailers, consumers, and mattress manufacturers had associated with the category for over 50 years. All of the products were designed to visually present updated form and function that would have the appropriate and desirable design for the best bedroom furniture and environments. They were a great success with customers.

**ANSWER:** L&P lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and therefore denies each and every allegation.

11. Knickerbocker has since developed numerous patented and commercially successful designer bed frames, sold under the brand BED ARCHITECTURE™, the brand emBrace®, and other brands. BED ARCHITECTURE™, for example, is a term that captures a high level of product design and sophistication. Knickerbocker's designer bed frame offerings also include the brand emBrace® that offer high quality, stylish, and attractive bed frames and bedding support systems. The visual appearance of the emBrace® has reinvented the entire look and feel of a bed frame, transforming the mattress into a design element in the bedroom, eliminating the perceived aesthetic need for a dust ruffle, which has traditionally hidden the austere unfinished steel hardware look of a bedframe.

**ANSWER:** L&P lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint and therefore denies each and every

allegation. L&P specifically denies that "[t]he visual appearance of the emBrace® has reinvented the entire look and feel of a bed frame."

12. Knickerbocker is the only national bed frame supplier committed to manufacturing all of its products here in the United States.

**ANSWER:** L&P lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint and therefore denies each and every allegation.

13. On information and belief, Knickerbocker alleges that Defendant has sold various products, including the Presto bed frame that infringe Knickerbocker's trade dress and other rights. Since no later than March 2017, this infringement has been undertaken willfully and with notice.

**ANSWER:** L&P denies each and every allegation in Paragraph 13 of the Complaint.

### Plaintiff's Alleged Trade Dress

14. Knickerbocker offers elegant and unique bed frames and bedding support systems for customers seeking high quality and pleasing aesthetics. These offerings include products sold under brands like emBrace® that incorporate the highest quality bed support systems in a variety of shapes and styles. With a prestigious heritage, distinctive shapes, and exceptional craftsmanship, products sold under the emBrace® brand are the vanguard of bedroom fashion, enhancing the appearance of bedrooms and providing a stunning platform for luxury mattress sets all over the world. The bedding-support-system products marketed under emBrace® carry a consistent and inherently distinctive trade dress developed by Knickerbocker.

**ANSWER:** L&P denies each and every allegation in Paragraph 14 of the Complaint.

15. Knickerbocker owns the trade dress on the products of Knickerbocker's emBrace® brand because Knickerbocker developed the designs of these products, including Knickerbocker's emBrace® bed frames, Knickerbocker's name appears with the products bearing the trade dress and in the advertisements and promotions of those products, Knickerbocker maintains the quality and uniformity of the products bearing the trade dress, and the public identifies the products as Knickerbocker's and poses product questions to, and makes product complaints to, Knickerbocker.

**ANSWER:** L&P denies each and every allegation in Paragraph 15 of the Complaint.

16. Knickerbocker revolutionized bed frame design by introducing the emBrace® line of products that re-think the form and aesthetics of a bed frame for the 21st century bedroom. Before emBrace®, the traditional bed frame had not had a substantial re-design in over 50 years.

The emBrace® design is the epitome of sophisticated style to meet the demands of today's luxury bedding.

**ANSWER:**    L&P denies each and every allegation in Paragraph 16 of the Complaint.

17.    Contoured resin side rails and tapered resin legs of substantial proportion establish the emBrace® design as the vanguard of bedroom fashion. Available in black, brown, gray, red, or white, emBrace® enhances the appearance of a bedroom and provides a stunning platform for a luxury mattress set. The emBrace® has been the only bed frame available in a choice of designer colors. Examples of the emBrace® line of bed frames are depicted below and in Exhibits A and B attached hereto:







**ANSWER:** L&P admits that the images following Paragraph 17 of the Complaint and Exhibits A and B to the Complaint appear to depict examples of Plaintiff's emBrace line of bed frames. L&P denies all other allegations in Paragraph 17 to the extent they are not specifically admitted.

18. The elements of the emBrace® trade dress and design, which include images in paragraph 17 above and Exhibits A and B, comprise a combination of features that include, inter alia, a product configuration for a bed frame consisting of a horizontal bar being curvilinear in form positioned above three individual pillars approximately evenly spaced; the pillars generally twice as tall as they are wide, tapering from the bar to the floor and inset slightly from the horizontal bar; the bar and supporting pillars being visually prominent along the bottom edge of a bedding set and generally soft and rounded in shape without sharp edges (collectively, the "emBrace Trade Dress").

**ANSWER:** L&P denies that Plaintiff owns trade dress rights in the subject matter of this litigation. L&P admits that the images following Paragraph 17 of the Complaint and Exhibits A and B to the Complaint appear to depict examples of Plaintiff's emBrace line of bed

frames. L&P denies all other allegations in Paragraph 18 to the extent they are not specifically admitted.

<div align="center">

**COUNT I**
**Trade Dress Infringement - Lanham Act**

</div>

19.     Knickerbocker re-alleges and incorporates by reference paragraphs 1 through the immediately preceding paragraph, inclusive, as if fully set forth herein.

**ANSWER:**     L&P re-alleges and incorporates by reference its responses to the allegations included in Paragraphs 1 through 18 as if fully set forth herein.

20.     Section 43(a) of the Lanham Act prohibits conduct that constitutes a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact that is likely to cause confusion. 15 U.S.C. § 1125(a).

**ANSWER:**     L&P admits that Section 43(a) of the Lanham Act prohibits conduct that constitutes a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact that is likely to cause confusion. 15 U.S.C. § 1125(a). L&P denies that it has violated Section 43(a) of the Lanham Act.

21.     Knickerbocker promotes and sells distinctive goods well known to customers interested in high quality and aesthetically pleasing bed support systems and bed frames. The emBrace Trade Dress and the designs of Knickerbocker's bed frames sold under the emBrace® brand have become recognized in the industry as symbols uniquely associated with Knickerbocker. Customers understand those designs to be indicative of a Knickerbocker product.

**ANSWER:**     L&P denies each and every allegation in Paragraph 21 of the Complaint.

22.     Knickerbocker's marketing efforts have been incredibly successful. The furniture, bedding and bedding-support industries have come to recognize and immediately associate the emBrace Trade Dress with Knickerbocker as a result of the extensive and continuous promotion and sales of bedding support systems emphasizing the emBrace Trade Dress for more than six years. As a result of these efforts, the emBrace Trade Dress has acquired appreciable secondary meaning, which identifies and distinguishes emBrace® bed frames from bed frames offered by competitors.

**ANSWER:**     L&P denies each and every allegation in Paragraph 22 of the Complaint.

23.     Knickerbocker's emBrace® Trade Dress represents highly valued goodwill owned by Knickerbocker.

**ANSWER:** L&P denies each and every allegation in Paragraph 23 of the Complaint.

24.    Knickerbocker owns the emBrace Trade Dress and all other trade dress on the products of Knickerbocker's emBrace® brand that is non-functional, inherently distinctive, and also has acquired substantial secondary meaning in the marketplace by virtue of its use by Knickerbocker in connection with the promotion and sale of goods and services, and has developed valuable goodwill associated therewith.

**ANSWER:** L&P denies each and every allegation in Paragraph 24 of the Complaint.

25.    By copying the designs of Knickerbocker's products, Defendant has engaged in trade dress infringement by falsely representing the origin of the relevant products, among other things, in violation of Section 43(a) of the Lanham Act.

**ANSWER:** L&P denies each and every allegation in Paragraph 25 of the Complaint.

26.    One example image of Defendant's infringing products, i.e., products sold under the Presto brand, is shown below.



**ANSWER:** L&P admits that the image above appears to depict one of L&P's bed frames sold under the brand name "Presto." L&P denies each and every remaining allegation in Paragraph 26 of the Complaint.

27.    An example image of Defendant's infringing products is shown below, next to an image of Knickerbocker's emBrace Trade Dress:

| Knickerbocker's emBrace® | Defendant's Product |
|:---:|:---:|
|  | |

**ANSWER:** L&P admits that the image shown on the right above appears to depict one of L&P's Presto bed frames. L&P admits that the image shown on the left above appears to depict one of Plaintiff's emBrace bed frames. L&P denies each and every remaining allegation in Paragraph 27 of the Complaint.

28. The aforesaid acts are intended to and likely to cause confusion in the marketplace as to the source, sponsorship, affiliation, or authorization of the products Defendant offers and distributes.

**ANSWER:** L&P denies each and every allegation in Paragraph 28 of the Complaint.

29. At all relevant times, Plaintiff Knickerbocker has had standing to bring this action against Defendant under 15 U.S.C. § 1125(a). Under said statute, Knickerbocker has a commercial interest to protect and is likely to be damaged by misuse of said trade dress, irrespective of ownership of said trade dress.

**ANSWER:** Paragraph 29 of the Complaint states legal conclusions to which no response is required. To the extent a response may be required, L&P denies each and every allegation in Paragraph 29.

30. On information and belief, Knickerbocker alleges that the aforesaid acts were committed with willful intent for the purpose of trading upon Knickerbocker's goodwill and business reputation, with knowledge of the lack of right to do so, and said acts have caused Knickerbocker damage in an unascertained amount.

**ANSWER:** L&P denies each and every allegation in Paragraph 30 of the Complaint.

31. Defendant's activities have caused and will continue to cause irreparable harm to Knickerbocker and to the substantial goodwill embodied in the emBrace Trade Dress, and such acts will continue unless restrained by this Court.

**ANSWER:** L&P denies each and every allegation in Paragraph 31 of the Complaint.

## COUNT II
### Trade Dress Infringement - Common Law

32. Knickerbocker re-alleges and incorporates by reference paragraphs 1 through the immediately preceding paragraph, inclusive, as if fully set forth herein.

**ANSWER:** L&P re-alleges and incorporates by reference its responses to the

allegations included in Paragraphs 1 through 31 as if fully set forth herein.

33. Defendant's actions constitute infringement of Knickerbocker's rights in the emBrace Trade Dress in violation of Texas common law.

**ANSWER:** L&P denies each and every allegation in Paragraph 33 of the Complaint.

34. Defendant's infringement is intentional and willful.

**ANSWER:** L&P denies each and every allegation in Paragraph 34 of the Complaint.

35. As a result of Defendant's conduct, Knickerbocker has suffered and will continue to suffer damage.

**ANSWER:** L&P denies each and every allegation in Paragraph 35 of the Complaint.

36. Defendant's activities have caused and will continue to cause irreparable harm to Knickerbocker and to the substantial goodwill embodied in the emBrace Trade Dress, and such acts will continue unless restrained by this Court.

**ANSWER:** L&P denies each and every allegation in Paragraph 36 of the Complaint.

## COUNT III
### Unfair Competition - Common Law

37. Knickerbocker re-alleges and incorporates by reference paragraphs 1 through the immediately preceding paragraph, inclusive, as if fully set forth herein.

**ANSWER:** L&P re-alleges and incorporates by reference its responses to the allegations included in Paragraphs 1 through 36 as if fully set forth herein.

38.     Defendant's actions constitute unfair competition in violation of Texas common law.

**ANSWER:**     L&P denies each and every allegation in Paragraph 38 of the Complaint.

39.     Defendant's acts of unfair competition are intentional and willful.

**ANSWER:**     L&P denies each and every allegation in Paragraph 39 of the Complaint.

40.     As a result of Defendant's conduct, Knickerbocker has suffered and will continue to suffer damage.

**ANSWER:**     L&P denies each and every allegation in Paragraph 40 of the Complaint.

41.     Defendant's activities have caused and will continue to cause irreparable harm to Knickerbocker and to the substantial goodwill embodied in the emBrace Trade Dress, and such acts will continue unless restrained by this Court.

**ANSWER:**     L&P denies each and every allegation in Paragraph 41 of the Complaint.

### Response to Prayer for Relief

L&P denies that Plaintiff is entitled to any relief whatsoever in this action, either as prayed for in the Complaint or otherwise.

### Response to Jury Demand

Plaintiff's demand for a jury trial requires no response.

### General Denial

To the extent any further response is deemed necessary to the numbered paragraphs of the Complaint, Prayer for Relief or Jury Demand, L&P denies any allegations contained therein. L&P further denies any allegations contained in the Complaint not specifically admitted herein to be true.

## LEGGETT & PLATT'S AFFIRMATIVE DEFENSES

L&P states the following as Affirmative Defenses without taking upon itself the burden of proof thereof:

### First Affirmative Defense

Plaintiff's claims are barred because the design features of its emBrace product identified as Plaintiff's alleged trade dress are functional and cannot be protected as trade dress.

### Second Affirmative Defense

Plaintiff's alleged trade dress in its emBrace product configuration is not registered with the U.S. Patent & Trademark Office and therefore is protectable only upon a showing of secondary meaning. Plaintiff's claims are barred because Plaintiff cannot prove that it has developed secondary meaning in its alleged trade dress and, accordingly, Plaintiff has no trade dress rights in those elements of its emBrace product.

### Third Affirmative Defense

Plaintiff's claims are barred because Plaintiff cannot prove that the design features of its emBrace product identified as Plaintiff's alleged trade dress are distinctive features that are protectable as trade dress.

### Fourth Affirmative Defense

Plaintiff's claims are barred because the features of its emBrace product identified as Plaintiff's alleged trade dress are generic and not protectable as trade dress. Plaintiff does not have the exclusive right to use the generic features that it alleges comprise its trade dress.

### Fifth Affirmative Defense

Plaintiff's claims are barred because Plaintiff cannot prove that it uses the features of its emBrace product identified as Plaintiff's alleged trade dress as a designation of source.

## Sixth Affirmative Defense

Plaintiff cannot prove that there is a likelihood of confusion among relevant customers between Plaintiff's emBrace product and L&P's Presto product.

## Seventh Affirmative Defense

Plaintiff cannot prove that L&P has infringed Plaintiff's alleged trade dress rights in the emBrace product.

## Eighth Affirmative Defense

Venue is inconvenient in the Eastern District of Texas.

## Reservation of Defenses

L&P reserves the right to raise any additional defenses that may be identified during the course of discovery.

## LEGGETT & PLATT'S COUNTERCLAIMS

For its Counterclaims against Counterdefendant-Plaintiff Knickerbocker Bed Company ("Knickerbocker"), Counterclaimant-Defendant Leggett & Platt, Incorporated ("L&P") states and alleges as follows:

## Nature of the Action

1.      In this lawsuit, Knickerbocker has asserted trade dress rights in aspects of the design of its bed frame sold under the brand name "emBrace" (the "Knickerbocker Purported Trade Dress").  But the elements Knickerbocker identifies as its trade dress are nothing more than functional components that are essential to the use or purpose, and impact the quality, cost, usability, and ease of assembly, of its products.  Knickerbocker and/or its affiliated entities have even applied for and, in some cases, received patent protection on certain elements of the Knickerbocker Purported Trade Dress, underscoring the functional nature of those elements.

Knickerbocker also touts the functionality of those elements in its advertising and marketing of the emBrace products.

2. Moreover, Knickerbocker's alleged trade dress is not distinctive. Knickerbocker cannot show that relevant consumers have come to recognize its alleged trade dress as a source identifier for Knickerbocker.

3. Accordingly, through this lawsuit, Knickerbocker is attempting to improperly use the trademark laws to exclude its competitor, L&P, from using design elements that are not eligible for protection as trade dress. L&P therefore seeks a declaration that Knickerbocker has no rights in the Knickerbocker Purported Trade Dress.

4. In any event, there is no likelihood of confusion between L&P's accused Presto bed frames and the Knickerbocker Purported Trade Dress. Accordingly, L&P also seeks a declaration that it does not infringe the Knickerbocker Purported Trade Dress.

**The Parties**

5. Counterclaimant-Defendant L&P is a Missouri corporation having its principal place of business at 1 Leggett Road, Carthage, Missouri 64836.

6. On information and belief, Counterdefendant-Plaintiff Knickerbocker is a New Jersey corporation having its principal place of business at 770 Commercial Ave., Carlstadt, New Jersey 07072.

**Jurisdiction and Venue**

7. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and the Declaratory Judgment Act, 28 U.S.C. § 2201. Moreover, these Counterclaims arise out of the same transaction or occurrence as set forth in Knickerbocker's Complaint, are ancillary to the main action, and derive their jurisdictional basis from that which

supports Knickerbocker's claims. As such, they are compulsory Counterclaims under Federal Rule of Civil Procedure 13(a).

8.      This Court can enter the declaratory relief sought in these Counterclaims because this case presents an actual case or controversy and is within the Court's jurisdiction.

9.      This Court has personal jurisdiction and venue is appropriate because Knickerbocker has consented to the propriety of venue in this Court by filing its claims for trade dress infringement and unfair competition against L&P in this Court, in response to which these Counterclaims are asserted. By filing these Counterclaims, L&P does not suggest, admit or imply that this Court is the most convenient forum for this action. L&P consents to the transfer of these Counterclaims to the Northern District of Illinois, if the Court determines that transferring Knickerbocker's claims to that district is appropriate.

**Factual Background**

10.     A bed frame is the part of a bed that is used to support the mattress and box spring. A bed frame generally includes head, foot, and side rails. Most beds larger than twin-sized beds (e.g., full-, queen-, and king-sized beds) also typically require a center support rail, usually with feet extending down to the floor.

11.     Numerous companies sell bed frames in the United States. The various brands and styles of bed frames share many similar characteristics due to their common purpose of supporting a mattress and box spring. Some of those similarities are depicted below:



a. Zinus 12 Inch Compack Bed Frame



b. Swascana STT Heavy Duty Easy Assemble Steel Bed Frame



c. Prestige P56 Premium Adjustable Bed Frame



d. Strobel Organic Heavy-Duty Metal Bed Frame

For example, many bed frames on the market include nine feet: three feet evenly spaced on each of the head, foot, center, and side support rails, as shown above.

12.     On information and belief, Knickerbocker began selling a line of bed frames under the brand name "emBrace" in 2011.

13.     Knickerbocker touts the functionality of various features of its emBrace bed frame on its website at www.knickerbockerbedframe.com and in its marketing materials.

14.     For example, Knickerbocker's website states as follows:

- "**No Tool Assembly:** Putting the emBrace$^{TM}$ together and taking it apart is incredibly simple.  Using drop-together wedge technology, the emBrace$^{TM}$ can be assembled or disassembled in less than five minutes without tools.  It is the only mattress support system that remains perfectly square and level without any flex or movement."

- "**Perfect Silence:** While traditional bed frames lend themselves to squeaking and rattling noises, the emBrace$^{TM}$ was designed to actively help eliminate sound that results from contact between a bed and its foundation.  The emBrace's advanced polymer resin absorbs contact pressure and acts as a complete sound muffler."

- "**Safer:** The emBrace$^{TM}$ has virtually no exposed steel or sharp edges.  The soft feel of the emBrace's advanced polymer coat is a dramatic departure from the construction of traditional bed frames."

15.     On information and belief, Knickerbocker has sought utility patent protection for elements of the Knickerbocker Purported Trade Dress.

16.     For example, a true and correct copy of U.S. Publication No. 2010/0242171 is attached hereto as Exhibit A.

17.     Exhibit A is a published U.S. patent application entitled "Three Dimensional Connection System For Bed Frame" (the "'171 Publication").

18.     The named inventors on the '171 Publication include Richard S. Polevoy, who, on information and belief, is the CEO of Knickerbocker.

19.     The Abstract of the '171 Publication states as follows:

A connection system for use in joining structural members of a bed frame together.  One of the structural members has a wedge and the other of the structural members has a cavity formed in a receiver.  The wedge has a plurality

of exterior surfaces that contact with a plurality of interior surfaces formed in the cavity. There may be four interior and exterior surfaces of the wedge and receiver and at least two of the surfaces taper inwardly in the downward direction. ***The interfitting of the wedge into the receiver make a solid connection that is enhanced by weight of the bedding positioned thereon. The connection resists twisting forces as well as lateral and fore and aft forces.***

Ex. A, '171 Publication, at Abstract (emphasis added).

20. The '171 Publication discloses, inter alia, how the tapered leg elements of the Knickerbocker Purported Trade Dress enable the "drop-together wedge technology" feature of the bed frame.

21. At least one figure of the '171 Publication—namely, Figure 29, reproduced below—depicts elements claimed as part of the Knickerbocker Purported Trade Dress:



**FIG. 29**

22. On information and belief, Knickerbocker also received a utility patent directed to, *inter alia*, the horizontal bar and pillars of the Knickerbocker Purported Trade Dress that are "generally soft and rounded in shape without sharp edges."

23. In particular, a true and correct copy of U.S. Patent No. 7,954,184 is attached hereto as Exhibit B.

24. Exhibit B is entitled "Structural Members for Bed Frame" (the "'184 Patent").

25. The '184 Patent issued on June 7, 2011, and is assigned to Finger Lakes Intellectual Property LLC.

26. On information and belief, Finger Lakes Intellectual Property LLC is an entity related to Knickerbocker.

27. The '184 Patent discloses in relevant part a bed frame comprising T-shaped side rails and legs that are covered in plastic material.

28. The '184 Patent includes the following description:

Turning to FIG. 32, there is shown an end view of the side rail 366, without the end cap, with the protective shield 390 in position protecting the leg (FIG. 31) and, as can be seen, by the combination of the non-linear outer surface 368 and the curved shape of the protective shield 390, ***there is enhanced protection against injury to persons inadvertently encountering the curved, non-linear surface and thus reduced potential for injury. The non-linear surfaces complement each other to protect against the injury to a person's shin or lower leg in striking a sharp edge of the side rail or leg of a normal bed frame*** while presenting an enhanced, overall attractive look to the appearance thereof.

Ex. B, '184 Patent, at 13:45-56 (emphasis added).

29. At least Figures 28 and 32 of the '184 Patent, reproduced below, depict elements claimed as part of the Knickerbocker Purported Trade Dress:





30.     On information and belief, Knickerbocker—through Finger Lakes Intellectual Property LLC—owns, or exclusively licenses, other pending utility patent applications and/or issued utility patents that disclose the functional aspects of the Knickerbocker Purported Trade Dress.

31.     A true and correct copy of an article published in *BedTimes* in January 2015 entitled "Mattress support systems: Reframing foundations," is attached hereto as Exhibit C.

32.     Exhibit C provides another example of Knickerbocker touting the functionality of its emBrace bed frame.

33.     A portion of that *BedTimes* article is reproduced below:

In 2012, Knickerbocker Bed Frame Co. helped bring bed support systems out of the shadows with the introduction of its emBrace system. Available in four colors, emBrace features high-strength steel wrapped in a plastic resin. The use of color adds a fashion element that had been missing in the category, says Joe Hunt, vice president of sales and marketing of the Carlstadt, New Jersey-based company.

"EmBrace provides consumers with a stylish frame that fits in with their other furnishings, and it also enhances the look of the bedding department," he says.

Priced at $300 to $400 retail, emBrace can be used freestanding or in conjunction with an existing headboard. The product has no exposed steel or sharp edges, and the polymer coating offers a soft look that is different from most traditional bed frames.

"Anyone can put emBrace together in a matter of minutes, and it's easy to move from room to room," Hunt says.

By extending toward the foot of the bed, the emBrace features complete "seat-edge support," he says. "This prolongs the life of the box springs and provides a completely stable base for the mattress."

Stability is a particularly important issue with today's heavier one-sided and specialty mattresses, he adds. With seven legs in queen size and nine legs in king size, emBrace is capable of supporting as much as 2,000 pounds.

"Our steel is nonyielding, which helps the mattress last longer and also reduces any movement that would otherwise occur when two people are on the bed.

"Mattresses and box springs are getting heavier and heavier, along with the U.S. population, so it's important to have a solid frame in place that can support that weight," Hunt says.

Ex. C at 13–14.

34.     On information and belief, the statements attributed to Knickerbocker in Exhibit C are true and accurate representations of statements made by Knickerbocker.

35.     On information and belief, Knickerbocker has not advertised the Knickerbocker Purported Trade Dress in a manner sufficient to create secondary meaning among relevant customers.

36.     The Knickerbocker Purported Trade Dress does not have secondary meaning among relevant customers.

## COUNT I:
## Declaratory Judgment that Purported Trade Dress is Not Protectable

37.     L&P repeats and re-alleges the allegations set forth in Paragraphs 1 through 36 above, as if fully set forth herein.

38. An actual and live dispute, case or controversy has arisen and currently exists between the parties regarding whether Knickerbocker has the exclusive right to use the Knickerbocker Purported Trade Dress.

39. Knickerbocker has filed a Complaint against L&P alleging trade dress infringement under the Lanham Act, and trade dress infringement and unfair competition under Texas state law.

40. L&P and Knickerbocker thus have adverse and antagonistic interests in the subject matter of the dispute, case or controversy.

41. The predicate for Knickerbocker's complaint is that it has protectable trade dress rights in the Knickerbocker Purported Trade Dress.

42. L&P therefore seeks a declaratory judgment that Knickerbocker is not entitled to the exclusive use of the Knickerbocker Purported Trade Dress.

43. The Knickerbocker Purported Trade Dress is not protectable, at least because:

    a. the alleged trade dress is not inherently distinctive;

    b. the alleged trade dress has not acquired distinctiveness through secondary meaning;

    c. the alleged trade dress is not protectable because it comprises matter that is functional as individual components and as a whole; and

    d. the alleged trade dress is generic and does not function as a source identifier for Knickerbocker.

44. Pursuant to 28 U.S.C. § 2201, L&P is entitled to a declaratory judgment that the Knickerbocker Purported Trade Dress is not entitled to trade dress protection under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or the common law of the State of Texas.

<u>**COUNT II:**</u>
<u>**Declaratory Judgment of Non-Infringement of Trade Dress**</u>

45.     L&P repeats and re-alleges the allegations set forth in Paragraphs 1 through 44 above, as if fully set forth herein.

46.     An actual and live dispute, case or controversy has arisen and currently exists between the parties regarding whether L&P has infringed the Knickerbocker Purported Trade Dress.

47.     Knickerbocker has filed a complaint against L&P alleging trade dress infringement under the Lanham Act, and trade dress infringement and unfair competition under Texas state law.

48.     L&P and Knickerbocker thus have adverse and antagonistic interests in the subject matter of the dispute, case or controversy.

49.     The predicate for Knickerbocker's complaint is that it has protectable trade dress rights in the Knickerbocker Purported Trade Dress, and that L&P has infringed that alleged trade dress.

50.     L&P therefore seeks a declaratory judgment that it has not infringed the Knickerbocker Purported Trade Dress.

51.     L&P has not and is not infringing the Knickerbocker Purported Trade Dress, at least because there is no likelihood of confusion between L&P's Presto bed frame and the Knickerbocker Purported Trade Dress.

52.     Pursuant to 28 U.S.C. § 2201, L&P is entitled to a declaratory judgment that it does not infringe the Knickerbocker Purported Trade Dress under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or the common law of the State of Texas.

## PRAYER FOR RELIEF

WHEREFORE, L&P prays for judgment as follows:

A.     For a declaration that the Knickerbocker Purported Trade Dress is not entitled to trade dress protection under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or the common law of the State of Texas;

B.     For a declaration that L&P has not infringed the Knickerbocker Purported Trade Dress under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or the common law of the State of Texas;

C.     For an award of attorneys' fees and costs; and

D.     For such other and further relief as this Court may deem just and proper.


Dated:  October 3, 2017

<div style="margin-left:40%">

Respectfully submitted,

By: */s/ Michael O. Warnecke, with
permission by Patrick C. Clutter*

Michael O. Warnecke (*Pro Hac Vice*)
IL Bar No. 2942291
Email: MWarnecke@perkinscoie.com
Tiffany P. Cunningham
IL Bar No. 6274763
Email: TCunningham@perkinscoie.com
Mark T. Smith (*Pro Hac Vice*)
IL Bar No. 6315040
Email: MarkSmith@perkinscoie.com
Jeremy L. Buxbaum (*Pro Hac Vice*)
IL Bar No. 6296010
Email: JBuxbaum@perkinscoie.com
Caroline A. Teichner (*Pro Hac Vice*)
IL Bar No. 6310306
Email: CTeichner@perkinscoie.com
**Perkins Coie LLP**
131 South Dearborn St., Ste. 1700

</div>

Chicago, IL 60603-5559
Tel.: 312.324.8400
Fax: 312.324.9400

Michael E. Jones
TX Bar No. 10929400
Email: mikejones@potterminton.com
Patrick C. Clutter, IV
TX Bar No. 24036374
Email: patrickclutter@potterminton.com
**Potter Minton, P.C.**
110 North College Ave., Ste. 500
Tyler, TX 75702
Tel.: 903.597.8311
Fax: 903.593.0846

***Counsel for Counterclaimant-Defendant, Leggett & Platt, Incorporated***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October, 3 2017.


By: */s/ Patrick C. Clutter*